WILLIAMS *v.* MOORE.

Opinion delivered April 19, 1915.

1.  CONTRACTS—CONTRACT OF SALE—DAMAGES—BREACH.—Defendant contracted to purchase a monument from plaintiff which had to be manufactured, and after the contract was closed undertook to cancel the same. *Held*, while the contract was binding, and could not be cancelled, defendant would be liable only for damages, and after notice plaintiff could not augment his damages by a continuance of the performance of the contract.

2.  CONTRACTS—MANUFACTURE OF ARTICLE BOUGHT—BREACH.—Defendant contracted to purchase a monument from plaintiff, the same to be manufactured. *Held*, the contract was one for labor to be performed in the manufacture of the monument, and defendant will be liable in damages when he refused to accept the same, when tendered by the plaintiff, and the same was burned in a fire immediately thereafter.

Appeal from Lawrence Circuit Court, Eastern District; *John B. McCaleb*, Special Judge; affirmed.

*W. E. Beloate* and *Smith & Gibson*, for appellant.

1.  The signed order and note, dated January 5, 1913, left it optional with appellee to fill the same. Until he accepted same and bound himself to fill it, there was no contract. 47 Ark. 519; 90 Ark. 131; *Id.* 184; 97 Ark. 613; 95 Ark. 421; 100 Ark. 510.

2.  Until the order had been accepted, though it contained a condition that same was not subject to countermand, it could be countermanded. 96 Ark. 616; 110 Ark. 128; 98 Ark. 621.

3.  Appellee has shown no damages that he could recover. Appellee could not augment the damages by proceeding with the work, after being notified not to do so. The right of a party to renounce a contract on terms of

just compensation, is well recognized. 7 Am. & Eng. Ann. Cases, 1172. The measure of damages is the difference between the cost and sale price—the profits. 2 *Id.* 997; 20 N. Y. 495.

In the case of chattel property to be manufactured, the rule is that the buyer acquires no property therein until it has been finished and delivered. 90 Ark. 134; Tiedeman on Sales, §§ 94, 95, 96, 98; 11 N. Y. 46.

4. Pinchback's possession was appellee's. Destruction of the monument while in appellee's possession, was his loss, not appellant's. 20 N. Y. 495.

*H. L. Ponder,* for appellee.

1. The written contract was given by the appellant and signed by him. Appellee's letter of January 7, 1913, was a clear and unequivocal acceptance. It was a firm and binding contract, and nothing was left optional with appellee.

2. Appellant's letter did not amount to a countermand. Cases cited by appellant upon the question of shippers' orders do not apply. That question does not arise in this case. The question of countermand is one for the jury, if it was made before acceptance. 110 Ark. 128.

3. When the order was given and the contract entered into, it was specified that the monument should be shipped to Pinchback, at Walnut Ridge. Appellant thereby made Pinchback his agent for delivery. 88 Ark. 269; 42 Ark. Law Rep. 225.

McCulloch, C. J. This is an action on a promissory note executed for the price of a monument. Plaintiff Moore is engaged in manufacturing and selling monuments and tombstones at Poplar Bluff, Mo., and the defendant Williams, who resides at Walnut Ridge, Ark., entered into a contract with plaintiff for the preparation of a monument to be erected at the grave of defendant's wife at Walnut Ridge. The order for the monument, and specifications and details concerning its preparation, were set forth in writing as a part of the promissory note executed for the price. The order for the monument was

made through one Pinchback, the agent of the plaintiff at Walnut Ridge, and was forwarded to plaintiff on January 5, 1913, the day it was solicited and received from the defendant. The contract contained a provision that delivery of the monument should be made on February 5, 1913, "or as soon afterward as possible," and it was to be shipped to Pinchback at Walnut Ridge. There was no specification in the contract that it was to be erected by plaintiff or his agent. The testimony shows that it was customary for the agent to do so, and that he offered in this instance to do it.

It was necessary for the plaintiff, according to the testimony, to order the rough material from other places, and that he proceeded to do so as soon as he received the order. On January 7, 1913, plaintiff wrote to defendant, acknowledging receipt of the order and promising to proceed with dispatch to fill it and deliver the monument at the earliest possible date, but suggested that it would probably be impossible to fill the order before about March 1. The letter, however, contained an unconditional acceptance, and it was a mere suggestion about the time for delivery being postponed beyond the date specified in the order. On January 18, 1913, defendant wrote the plaintiff a letter in which he requested that the order be held up until further notice while he was trying to adjust a complication by reason of having given a previous order for a monument to a Memphis house, and the letter also said, "Please consider this order countermanded pending my negotiations with Morris Brothers, and if I can adjust the matter with them so as to effectually countermand my order with them, I will notify you so that you can go ahead." Upon the receipt of this letter. plaintiff promptly wrote to the defendant a letter in which he refused to recognize the countermand, and, after reciting the efforts that plaintiff had made to get the material to complete the order, wound up by expressing the hope that defendant would reconsider the matter, and not attempt to cancel the order. No answer was made to this letter, and the monument was completed and shipped to Pinchback, the

agent at Walnut Ridge, arriving there about the 1st of February. Pinchback notified defendant of the arrival of the monument, and proposed to take it out and erect it at the proper place in the cemetery. Pinchback testified that defendant repudiated the order at that time and refused to allow him to erect the monument. Defendant denied that he made a direct refusal, but stated that when Pinchback informed him about the monument being there, he (defendant) replied, "All right, I am not ready to take it up now." The jury returned a verdict in favor of the plaintiff and defendant has appealed.

It is insisted, in the first place, that there was no acceptance of the order, and for that reason there can be no recovery. The evidence, we think, shows that no acceptance was necessary by plaintiff in person for the reason that Pinchback was the agent for the purpose of making sales, and that he had authority to accept the order, and did accept it. But, be that as it may, the letter of plaintiff to defendant was an unconditional acceptance of the order, and, as before stated, the statement about a postponement of the date for delivery was a mere suggestion which did not amount to a proposal of a new contract or placing a condition upon the performance of the old one.

(1) It is next contended that the order was countermanded before complete performance, and the defendant is only liable for the damages which were suffered by plaintiff up to the time of the breach. It is true that, notwithstanding the stipulation against countermand, defendant would only be liable for the damages arising from the breach of the contract, and not necessarily for the full amount stipulated in the contract. In other words, the plaintiff, after notice, would not be permitted to augment his damages by a continuance of the performance of the contract. The correspondence between the parties at that time does not, however, show an unconditional countermand of the order, and when the two letters on the subject are read together, we think that the silence of the defendant justified the plaintiff in continuing in the preparation of the monument. The plea of the defendant was

merely for time for further negotiation with the Memphis house, and if he expected to insist upon the countermand, he should have answered the plaintiff's letter.

(2)   The evidence shows that the monument was burned in the warehouse of the railroad company at Walnut Ridge a day or so after it was tendered to defendant, and he had refused to permit it to be erected at the grave of his wife. The testimony is conflicting as to what occurred between Pinchback and defendant concerning the delivery of the monument, but the verdict of the jury settled that issue against defendant. Counsel insist that there can be no recovery for the reason that the monument was not in fact delivered, and that its loss fell upon the plaintiff. That contention is not sound. It was not a contract for the sale and delivery of an article, but was one for labor to be performed in the manufacture of the monument. *Moore v. Camden Marble & Granite Works,* 80 Ark. 274. When the plaintiff's agent tendered the delivery of the monument, it was all he could do, and the loss, resulting from the destruction of it thereafter, fell upon the defendant. The fact, as some of the evidence tended to show, that plaintiff made an ineffectual effort to collect from the railroad company does not bar his recovery. Of course, if he had collected the amount of his claim from the railroad company, he could not recover from the defendant, but there is no proof that there was a collection of the amount. The only thing shown is that he presented a claim which does not appear to have been acted upon.

We are of the opinion that the plaintiff has fully made out his case by the evidence, and that the verdict in his favor was correct.

Judgment affirmed.